## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| United Airlines, Inc., | |
| Plaintiff, | Case No. 14 C 9214 |
| v. | |
| Aktarer Zaman, individually and d/b/a Skiplagged.com, | Judge John Robert Blakey |
| Defendant. | |

### <u>MEMORANDUM OPINION AND ORDER</u>

In order to exercise personal jurisdiction over a defendant, this Court must determine whether the defendant has a "substantial connection" with Illinois, that is, whether the defendant's contacts connect him to Illinois in a "meaningful way." *See Walden v. Fiore*, __ U.S. __, 134 S. Ct. 1115, 1121, 1125 (2014). Based on controlling case law, such contacts must satisfy at least three requirements: (1) the contacts are created by the defendant himself; (2) the contacts are targeted at the forum state (as opposed to merely persons who reside there); and (3) the contacts bear on the substantive legal dispute. In this case, the record only shows a limited course of dealing between the parties and Defendant's Illinois contacts were with a third-party. Such contacts, even where relevant, are not meaningful enough to warrant exercising personal jurisdiction over Defendant.

As explained below, this is a trademark infringement action brought by Plaintiff United Airlines against Defendant Aktarer Zaman, who operates the

website Skiplagged.com. Skiplagged.com aggregates flight information from airlines and booking websites, and links to those websites so that users can purchase tickets. Unlike other booking websites, Skiplagged.com also enables consumers to engage in a practice known as "hidden city" ticketing. That is where a passenger purchases a ticket on a flight where their destination is a layover stop. Rather than buying a direct ticket from Chicago to Denver, for example, it may be cheaper to buy a ticket from Chicago to San Jose with a layover in Denver and then skip the second leg of the flight (from Denver to San Jose). Based on Defendant's operation of Skiplagged.com, Plaintiff brings three claims: (1) violation of the Lanham Act; (2) tortious interference with contract; and (3) misappropriation.

Defendant, a New York resident, has moved to dismiss [24] for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

This Court grants the motion.

## I. Legal Standard

A motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) tests whether a federal court has personal jurisdiction over a defendant. When deciding a Rule 12(b)(2) motion without an evidentiary hearing, as here, Plaintiff must make a *prima facie* case of personal jurisdiction. *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010); *GCIU-Employer Retirement Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009).

Plaintiff bears the burden of establishing that personal jurisdiction exists. *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d

796, 799 (7th Cir. 2014); *uBID*, 623 F.3d at 423-24; *Goldfarb*, 565 F.3d at 1023. To determine whether Plaintiff has met its burden, this Court may consider affidavits from both parties. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). When Defendant challenges by declaration a fact alleged in the Complaint, Plaintiff has an obligation to go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction. *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003). Courts must also resolve all factual disputes in Plaintiff's favor. *Northern Grain Marketing, LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014); *Goldfarb*, 565 F.3d at 1020 n.1. Unrefuted facts in Defendant's affidavits, however, will be taken as true. *Goldfarb*, 565 F.3d at 1020 n.1. While in this context affidavits trump the pleadings, in the end, all facts disputed in the affidavits will be resolved in Plaintiff's favor. *Purdue Research Foundation*, 338 F.3d at 782.

## II.    Facts[1]

Defendant, a New York resident, is the founder and CEO of Skiplagged.com. Complaint ¶ 11; Zaman Affidavit ¶ 2. Skiplagged.com aggregates flight information from airlines and booking websites, such as United.com and Orbitz.com, and links to those websites so that users can purchase tickets. Complaint ¶¶ 3, 30, 33, 39, 45. The website, in particular, enables consumers to engage in "hidden city" ticketing, Complaint ¶¶ 3, 30, which is where a passenger purchases a ticket on a flight where their destination is a layover stop, Complaint ¶¶ 3-4; Zaman Affidavit ¶ 3.

---

[1] The facts are taken from the Complaint [1] and other evidence submitted by the parties, including two sworn statements: the Affidavit of Aktarer Zaman [25-1] and the Declaration of Tye Radcliffe [34-1].

The relevant background began December 29, 2013, when Defendant entered into an Affiliate Agreement with Orbitz, LLC (a former co-plaintiff in this action). Complaint ¶¶ 6, 15, 22. Defendant, among other things, agreed not to link to Orbitz.com for illegitimate reservations and bookings or to disguise the origin of information transmitted through Orbitz.com. Complaint ¶ 23. Under the "Miscellaneous" provision of the Affiliate Agreement, Defendant consented to jurisdiction of the state and federal courts located in Cook County, Illinois for "any dispute involving this Agreement." Complaint ¶ 15; Affiliate Agreement, attached as Exhibit A to Complaint. In the same provision, Defendant also agreed that the Affiliate Agreement would be governed by Illinois law. Complaint ¶ 15. The Agreement was terminated on September 3, 2014. Complaint ¶ 22.

In August 2014, Plaintiff, a Delaware corporation with its principal place of business in Illinois, learned that Defendant had been promoting hidden city ticketing since at least early 2014. Complaint ¶¶ 3-6, 8, 30, 39; Radcliffe Declaration ¶ 1. Plaintiff also learned that Skiplagged.com redirected consumers to United.com to make hidden city and other bookings on United flights. Radcliffe Declaration ¶ 30. Plaintiff later discovered that Defendant also redirected consumers to other booking websites in the same way. Complaint ¶¶ 30, 39.

On September 5, 2014, Plaintiff, through its Managing Counsel, Mike Henning, sent a cease and desist letter to Defendant. Complaint ¶ 53. Mr. Henning demanded that Defendant refrain from offering hidden city ticketing of United flights because it was prohibited by Section 6(J) of Plaintiff's Contract of Carriage

with its customers. Complaint ¶ 53; Radcliffe Declaration ¶ 4. The cover email to the letter and the subsequent email chain, but not the letter itself, is part of the record. *See generally* Email Chain [34-2]. Mr. Henning's email signature block identifies his office address as Houston, Texas. Email Chain [34-2] at 6.

The same day, Defendant responded to Mr. Henning, outlining his disagreements with the letter and also proposing a partnership between the parties:

> … Skiplagged has been partnering directly with airlines and has several partners already. Skiplagged is allowing airlines to make the best of the inevitable: more informed consumers. United is not yet a partner and we believe it would be wise to change that. As such, we will greatly appreciate it if you connect us with the appropriate people.

Email Chain [34-2] at 3-6; *see also* Complaint ¶¶ 48, 54.

Three days later, on September 8, Mr. Henning left Defendant a voicemail to discuss the cease and desist letter; and, in an email, asked Defendant to return his call. Email Chain [34-2] at 3. The call took place on September 9 among Mr. Henning, Defendant and Tye Radcliffe, Plaintiff's Illinois-based Director of Marketing Distribution Strategy. Complaint ¶ 55; Radcliffe Declaration ¶ 4. It appears from the email correspondence that Mr. Henning initiated the call. Email Chain [34-2] at 2. The record does not show why Mr. Radcliffe participated in the call. During the call, Defendant, without being prompted by Mr. Henning or Mr. Radcliffe, proposed that Plaintiff become one of its partners. Radcliffe Declaration ¶ 4. Mr. Radcliffe declined the offer. Radcliffe Declaration ¶ 4. Also during the call, Defendant agreed to remove all United references, logos and flight and fare information from Skiplagged.com. Complaint ¶ 55; Radcliffe Declaration ¶ 4.

Defendant broke his promise. On September 13, 2014, Plaintiff discovered that Defendant was still promoting hidden city flights on United under a "censored" airline name and logo. Complaint ¶ 56; Radcliffe Declaration ¶ 5. The censored logo included an explanatory icon that read: "Sorry for the inconvenience, but United Airlines says we can't show you this information." Complaint ¶ 56.

On September 15, 2014, Defendant again promised to remove United content from Skiplagged.com. Complaint ¶ 57; Email Chain [34-2] at 2. That promise too was broken. Defendant continued to present United flight offerings on Skiplagged.com with similar messages referring to Plaintiff. Complaint ¶ 58; Radcliffe Declaration ¶ 6. This lawsuit ensued on November 17, 2014.

## III. Analysis

### A. Personal Jurisdiction

When subject matter jurisdiction rests on a federal question (the Lanham Act, here) and supplemental jurisdiction, and no special federal rule for personal jurisdiction applies, as here; this Court may exercise personal jurisdiction over Defendant only if it is (1) proper under the forum state's personal jurisdiction statute and (2) comports with the requirements of the Due Process Clause. *Advanced Tactical*, 751 F.3d at 800 (setting forth the personal jurisdiction standard for Lanham Act and state law claims); *see also uBID*, 623 F.3d at 425; *Northern Grain*, 743 F.3d at 491-92; *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010).

The Illinois long-arm statute permits this Court to exercise personal jurisdiction "on any ... basis now or hereafter permitted by the Illinois Constitution

and the Constitution of the United States." 735 ILCS 5/2-209(c); *see Northern Grain*, 743 F.3d at 491-92. Because the Seventh Circuit has found no "operative difference" between the two constitutional limits, this Court will limit its analysis to whether exercising jurisdiction over Defendant comports with the Due Process Clause. *Illinois v. Hemi Group LLC*, 622 F.3d 754, 756-57 (7th Cir. 2010).

Personal jurisdiction may be either general or specific. *Advanced Tactical*, 751 F.3d at 800. Plaintiff proceeds only on the basis that this Court has specific personal jurisdiction over Defendant. In determining whether this Court may exercise specific personal jurisdiction over a foreign defendant, the key issues are: (1) whether Defendant has sufficient "minimum contacts" with the forum state (2) such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Tamburo*, 601 F.3d at 701 (internal quotations omitted); *see also uBID*, 623 F.3d at 425. This Court addresses each issue in turn.

### 1. Minimum Contacts

To find minimum contacts, this Court must determine whether Defendant has a "substantial connection" with Illinois, or, put another way, determine whether Defendant's contacts connect him to Illinois in a "meaningful way." *See Walden v. Fiore*, __ U.S. __, 134 S. Ct. 1115, 1121, 1125 (2014). While Courts in this Circuit have varied the structure of their minimum contacts analysis, Supreme Court and Seventh Circuit case law instruct that, at its core, this analysis turns on the (1) relevance of Defendant's contacts with the forum state and (2) how meaningful those contacts are. *See, e.g.*, *Walden*, 134 S. Ct. at 1122-23; *Advanced Tactical*, 751

F.3d at 801-03; *Northern Grain*, 743 F.3d at 489, 494-96; *Hemi Group*, 622 F.3d at 757-59; *uBID*, 623 F.3d at 426-32. These two factors, while conceptually different, many times are considered together. *E.g.*, *Advanced Tactical*, 751 F.3d at 801-03; *Northern Grain*, 743 F.3d at 495-96.

The relevance analysis has been an area of recent clarification by both courts, *see Walden*, 134 S. Ct. 1115; *Advanced Tactical*, 751 F.3d 796, so this Court begins by reviewing these controlling cases before analyzing Defendant's particular contacts with Illinois. Based on its review of controlling case law, this Court finds that Defendant's contacts must satisfy at least three requirements to be relevant: (1) the contacts are created by the defendant himself; (2) the contacts are targeted at the forum state (as opposed to persons who reside there); and (3) the contacts bear on the substantive legal dispute. *See Walden*, 134 S. Ct. at 1122-23; *Advanced Tactical*, 751 F.3d at 801-03; *see also Goldfarb*, 565 F.3d at 1024; *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277-78 (7th Cir. 1997).[2]

The Supreme Court in *Walden* addressed the relevance of an injury occurring in the forum state to the personal jurisdiction analysis. The defendant-petitioner, a police officer, seized almost $97,000 from the plaintiffs-respondents at an airport in Georgia; and he later submitted an allegedly false probable cause affidavit to the

---

[2] Restricting the universe of relevant contacts also comports with the policy underlying the personal jurisdiction requirement: protecting the liberty of non-resident defendants. *Walden*, 134 S. Ct. at 1122-23. Otherwise, they risk being hailed into foreign states based on "random, fortuitous or attenuated contacts." *Walden*, 134 S. Ct. at 1123; *accord uBID*, 623 F.3d at 426. As the Seventh Circuit has found, "potential defendants should have some control over—and certainly should not be surprised by—the jurisdictional consequences of their actions." *Tamburo*, 601 F.3d at 701 (internal quotations and brackets omitted); *see also Northern Grain*, 743 F.3d at 492-93; *Hemi Group*, 622 F.3d at 757.

United States Attorney's Office in Georgia to assist in bringing a federal action for forfeiture of this money. 134 S. Ct. at 1119-20. The respondents had come to Georgia from Puerto Rico and were en route to Nevada, where they had a residence. *Id.* at 1119. The respondents claimed the $97,000 was their gambling bank and winnings, and not from drugs. *Id.*

The respondents brought Fourth Amendment claims against the petitioner in Nevada federal court. *Id.* at 1120. The district court granted the petitioner's motion to dismiss for lack of personal jurisdiction, and the Ninth Circuit reversed. *Id.* at 1120-21. The Supreme Court agreed with the district court. *Id.* at 1121.

The Supreme Court found that the Ninth Circuit had erred by focusing on petitioner's contacts with the respondents and not the forum state itself. *Id.* at 1124-25. None of the underlying conduct was tethered to Nevada in any "meaningful way," even though respondents have a residence in Nevada and the petitioner knew that the respondents were en route to Nevada at the time the money was seized. *Id.* The seizure occurred in Georgia and the allegedly false probable cause affidavit was drafted and sent in Georgia. *Id.* at 1124. While Nevada counsel for the respondents had contacted the petitioner pre-suit to settle the dispute, that conduct was the kind of unilateral activity by a third-party that cannot underpin personal jurisdiction. *Id.* at 1119, 1125.

In reaching this decision, the Supreme Court analyzed its prior decision in *Calder v. Jones*, 465 U.S. 783 (1984). *Calder* was a libel action brought in California federal court by a California actress against a Florida-based reporter and

editor for the National Enquirer, a Florida company. As explained by *Walden*, the Court in *Calder* found that personal jurisdiction was proper in California because California was the "focal point" both of the story and the harm suffered. 134 S. Ct. at 1123. In seemingly broad language, the Supreme Court in *Calder* explained that jurisdiction was "proper in California based on the 'effects' of [defendants'] Florida conduct in California." *Walden*, 134 S. Ct. at 1123 (quoting *Calder*).

In *Walden*, 134 S. Ct. at 1123-24, the Supreme Court recast its decision in *Calder*. *Calder* did not hold that mere injury to a forum resident is a sufficient contact with the forum. *Id.* at 1125. Rather, the Court in *Walden* explained that the strength of the forum connection in *Calder* was "largely a function of the nature of the libel tort." *Id.* at 1124. No matter how libelous the National Enquirer article was, there could be no injury absent publication to third-persons. *Id.* Publication is a necessary element of libel, so, according to *Walden*, the National Enquirer's reporter and editors' intentional tort "actually occurred *in* California." *Id.* (emphasis in original). That was not the case in *Walden*, which did not involve a libel claim.

Three months after *Walden*, the Seventh Circuit decided *Advanced Tactical*. *Advanced Tactical* was a trademark infringement action that also involved claims for violation of the Lanham Act (Count IV, here) and misappropriation (Count VI, here). 751 F.3d at 798-99.

The Indiana-based plaintiff, Advanced Tactical, manufactured and sold a more lethal version of a paintball (a ball filled with a pepper-spray-like irritant)

under the brand name PepperBall. *Id.* at 798. Advanced Tactical acquired the trademarks to that name from another company (PepperBall Technologies) that was going through foreclosure. *Id.* Around that time, APON, a Mexican company that had supplied irritant projectiles to PepperBall Technologies, entered into negotiations to sell projectiles to defendants Real Action, a California company, and its president. *Id.* at 798-99. APON and Real Action reached a deal in August 2012, at which time Real Action posted on its website, and circulated through its email list, an announcement that it had acquired the "machinery, recipes, and materials once used by PepperBall Technologies Inc." *Id.* at 799. That statement falsely implied, according to Advanced Tactical, that Real Action was the only maker of PepperBall irritant projectiles since PepperBall Technologies' foreclosure. *Id.*

Advanced Tactical sued Real Action and its president in Indiana federal court. *Id.* at 798-99. The district court held an evidentiary hearing and concluded that there was personal jurisdiction over the defendants. *Id.* at 799. The district court applied Indiana law, which, like Illinois, has a long-arm statute that extends personal jurisdiction to the full extent permitted by the Constitution. *Id.* at 799-800. The Seventh Circuit reversed the district court. *Id.* at 798.

The Seventh Circuit began with a bedrock principle: "The relevant contacts are those that center on the relations among the defendant, the forum, and the litigation." *Id.* at 801. Thus, only suit-related contacts and not, for example, defendant's contacts with the plaintiff or third-parties, can create the required connection with the forum state. *Id.* Based on this principle, the Seventh Circuit

11

concluded that the district court had improperly considered multiple contacts as relevant in its personal jurisdiction analysis. *Id.*

The district court first considered that Real Action had fulfilled more than 600 orders of projectiles for purchasers in Indiana after putting the allegedly infringing message on its website and in emails. *Id.* at 801. But the record did not show that those orders had any connection with the litigation. *Id.* There was no evidence that any Indiana purchaser actually saw the message or knew that Advanced Tactical was selling PepperBalls. *Id.* Even if there was a connection, the Seventh Circuit expressed concern that a judicial finding that a few shipment sales in a state can satisfy personal jurisdiction would create *de facto* universal jurisdiction. *Id.* at 801-02.

Second, the district court considered that Real Action knew that Advanced Tactical was an Indiana company and could foresee injury to Advanced Tactical in Indiana. *Id.* at 802. The Seventh Circuit found that is no longer a valid consideration after *Walden*. *Advanced Tactical*, 751 F.3d at 802. As the Court explained, *Walden* changed existing law in this Circuit (and elsewhere) by holding that the relevant contacts are those that the defendant itself creates. *Id.* The geography of Advanced Tactical's injury, therefore, was a matter of happenstance from Real Action's point-of-view and not driven by the company's purposeful conduct. *Id.*

Third, the district court improperly credited Real Action's online activities: (1) sending an email to a list of subscribers that included Indiana residents and (2)

maintaining an interactive website. *Id.* at 802-03. The Seventh Circuit characterized the residence of subscribers as "entirely fortuitous, depending wholly on activities out of the defendant's control." *Id.* at 803. The operation of an interactive webpage accessible nationwide likewise did not create adequate in-state contacts. *Id.* As such, Real Action's online activities, without more, were not sufficient to establish relevant contacts. *Id.* at 802-03. The Seventh Circuit did caution, however, that such contacts can give rise to personal jurisdiction if targeted at residents of a specific state, such as through geographically-restricted online ads. *Id.* at 803.

Here, there is no dispute that Defendant does not reside in Illinois, has not traveled to Illinois in connection with Skiplagged.com, and does not bank in Illinois. Zaman Affidavit ¶ 4; *see* [34] at 11-12. Instead, Plaintiff argues that Defendant purposefully reached out to Illinois in three ways. [34] at 8-11. This Court addresses each argument in turn.

### a) Forum State Injury

Plaintiff argues that Defendant harmed an Illinois-based Plaintiff and knew that the injury would be felt in Illinois. [34] at 8-9. After *Walden* and *Advanced Tactical*, the mere geography of Plaintiff's injury and Plaintiff's location, without more, can no longer serve as the relevant contacts supporting personal jurisdiction. *See also Picot v. Weston*, No. 12-17098, __ F.3d __, 2015 WL 1259528, at *6 (9th Cir. March 19, 2015) (analyzing *Walden*); *Fastpath, Inc. v. Arbela Technologies Corp.*, 760 F.3d 816, 823 (8th Cir. 2014) (same); *Rockwood Select Asset Fund XI (6)-1, LLC*

*v. Devine, Millimet & Branch*, 750 F.3d 1178, 1180 (10th Cir. 2014) (same).  These cases instruct that the proper inquiry considers Defendant's ties with the forum— not Defendant's ties with Plaintiff or Plaintiff's ties with the forum.

Plaintiff points to the Seventh Circuit's decision in *Tamburo*.  [34] at 8-9. That case is distinguishable after *Walden*.  The plaintiff in *Tamburo*, an Illinois resident, brought several tort claims, including one for trade libel, in this District against several residents of foreign states and countries.  601 F.3d at 697-99.  The plaintiff had developed a dog-pedigree software program that incorporated information from public websites, some of which the defendants owned.  *Id.* at 697-98.  In retaliation, the defendants posted comments on their websites and on message boards accusing the plaintiff of stealing their data.  *Id.*  Some comments identified the plaintiff's Illinois address and urged readers to harass him.  *Id.*

The Seventh Circuit, contrary to the district court, found there was personal jurisdiction over all defendants but one.  *Id.* at 697-99, 708.  The Seventh Circuit based its decision on the Supreme Court's decision in *Calder* and its progeny.  *See id.* at 702-08.  It began by observing that *Calder* gave "significant weight" to the "effects" of a foreign defendant's conduct within the forum state, *id.* at 702, and then analyzed the conflicting case law in this Circuit about the scope of *Calder*, *id.* at 703-08.  The Seventh Circuit concluded that exercising jurisdiction is proper where there is a forum state injury and tortious conduct specifically directed at the forum. *Id.* at 706.

As applied to the facts before it, the Seventh Circuit concluded that the defendants had made an electronic entry into Illinois in two ways. The defendants: (1) defamed an Illinois resident in comments that included his Illinois address; and (2) exhorted readers to boycott his products. *Id.* at 706-08. The exception to the Seventh Circuit's exercise of personal jurisdiction was an Australian company who reposted some of the allegedly defamatory messages, but the record did not show that the company knew the plaintiff resided in Illinois. *Id.* at 708.

The scope of *Tamburo*'s finding of personal jurisdiction must be understood in light of the Supreme Court's recent analysis of *Calder* in *Walden*. *Calder*, like *Tamburo*, involved a libel claim, so the reputation-based injuries at issue in those two cases actually occurred *in* the forum states where the defamatory materials were published. *See Walden*, 134 S. Ct. at 1124; *see Hemi Group*, 622 F.3d at 758-59 (characterizing *Tamburo* as a "defamation" case).

There is no libel claim here, however, and this Court cannot find jurisdiction based on a claim not pled in the complaint. *See Picot*, 2015 WL 1259528, at *7 n.3. Plaintiff brings two intentional tort claims: tortious interference with contract (Count V) and misappropriation (Count VI). Neither of these claims requires publication in the way a libel claim does. *See Burrell v. City of Mattoon*, 378 F.3d 642, 651-52 (7th Cir. 2004) (stating elements for tortious interference with contract under Illinois law); *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 721 (7th Cir. 2003) (stating elements for misappropriation under Illinois law). Nor has Plaintiff suggested otherwise.

Despite the absence of a libel claim, Plaintiff argues that Defendant circulated tortious statements about it over the Internet. *See* [34] at 9. Even if relevant, this contact is not sufficiently meaningful to create personal jurisdiction. Unlike *Tamburo* where the tortious statements gave an Illinois address and asked readers to harass the plaintiff there, the statement here is geographically neutral. Defendant stated: "Sorry for the inconvenience, but United Airlines says we can't show you this information." Complaint ¶ 56. There is no mention that Plaintiff is an Illinois company. Nor is this the hypothetical case envisioned by *Advanced Tactical*, 751 F.3d at 803, where Defendant has engaged in geographically-targeted online activity. Plaintiff has not suggested that Illinois consumers saw a different message when they visited Skiplagged.com than consumers in the other 49 states.

In light of the underlying claims, this case is closer to the Seventh Circuit's decision in *Advanced Tactical*, which found personal jurisdiction wanting in a trademark action that included a misappropriation claim. Likewise, the Court in *Walden* found personal jurisdiction lacking where the allegedly false statement was not tethered to the forum state. 134 S. Ct. at 1119-20, 1124. Personal jurisdiction is lacking here.

**b)    Affiliate Agreement**

Plaintiff next argues that another case-related contact is the Affiliate Agreement between Defendant and Orbitz. [34] at 10. The Agreement, as Plaintiff emphasizes, contained an Illinois forum selection clause. *Id.*

16

The flaw in this argument though is that the Affiliate Agreement does not bear on the substantive legal dispute here, so its forum selection clause is not a contact with Illinois relevant to this Court's personal jurisdiction analysis. *See Goldfarb*, 565 F.3d at 1024; *RAR*, 107 F.3d at 1277-79. The cause of action must "directly arise" out of the specific contacts between the defendant and the forum state. *RAR*, 107 F.3d at 1278. Here, the substantive legal dispute does not directly arise from the Affiliate Agreement:

- The subject matter of the Affiliate Agreement is not closely related to this dispute. The Agreement is in the nature of a form contract that Orbitz required for participation in its affiliate program. *See* Complaint ¶ 15; Affiliate Agreement, attached as Exhibit A to Complaint. The record does not show that the Agreement was designed to prevent Defendant from promoting hidden city flights, although that may have been an incidental effect of the Agreement, or that the Agreement could prevent Defendant from misappropriating Plaintiff's trademarks and other rights.

- Plaintiff lacks rights under the Affiliate Agreement. Plaintiff is not a party to the Affiliate Agreement, nor is Plaintiff a third-party beneficiary.

- None of Plaintiff's claims (Counts IV to VI) is relevant to the Affiliate Agreement. Orbitz settled its claims with Defendant (*see* [36]), so Orbitz's counts (Counts I to III) are no longer at issue. Count III was the only one based on Defendant's breach of the Agreement. Indeed, Plaintiff's claims exist apart from the Affiliate Agreement. The Agreement by its terms restricted Defendant's rights to use Orbitz.com—not United.com. Defendant thus could have complied with the Affiliate Agreement yet still have engaged in the purported wrongful conduct at issue in this litigation.

- The Affiliate Agreement is temporally removed from the facts here. For example, the record does not show that Defendant was infringing on Plaintiff's rights in December 2013, when Defendant signed the Affiliate Agreement.

In these respects, this case is analogous to *uBID*. Although the Seventh Circuit in *uBID* ultimately exercised personal jurisdiction, the Court observed that

forum selection clauses in contracts GoDaddy, an Arizona company that runs GoDaddy.com, entered into with third-party customers had "nothing to do" with the instant cybersquatting dispute brought by a non-customer. 623 F.3d at 429 n.2.

For these reasons, exercising personal jurisdiction over Defendant is not warranted in this case just because it may be warranted in other cases involving Defendant, such as a dispute between Defendant and Orbitz over the Affiliate Agreement. The doctrine of personal jurisdiction is case specific.

### c) Communications between Parties

Plaintiff last argues that Defendant's communications with it, including partnership proposals, establish personal jurisdiction. [34] at 10.

On September 5, 2014, Plaintiff, through Mr. Henning, its Texas-based in-house counsel, sent Defendant a cease and desist letter by email. Defendant responded to the letter that same day, proposing a potential partnership between the parties. Defendant asked Henning to "connect us with appropriate people." On September 8, Henning left Defendant a voicemail about the cease and desist letter and asked Defendant to return his call. Counsel and Defendant, along with Mr. Radcliffe, Plaintiff's Illinois-based director of marketing, spoke on September 9. On the call, Defendant pitched its business deal, which Plaintiff declined.

Emails and calls directed at the forum state can be meaningful enough to create personal jurisdiction, *see Walden*, 134 S. Ct. at 1122; however, the contacts here are not. Defendant principally communicated with Mr. Henning, whose signature block showed that he worked in Texas—not Illinois. The only connection

with an Illinois employee occurred during the September 9, 2014 call which included Mr. Radcliffe. But the record does not show why Mr. Radcliffe joined the call; if Defendant knew Mr. Radcliffe would be joining the call; if Defendant knew Mr. Radcliffe was based in Illinois; or if Mr. Radcliffe participated in the call while physically in Illinois.

Based on this record, the Court's decision in *Fletcher v. Doig*, No. 13 C 3270, 2014 WL 4920238 (N.D. Ill. Sept. 30, 2014), which Plaintiff cites (*see* [34] at 9), confirms that personal jurisdiction is lacking here. The Court in *Fletcher* found "ample evidence" that the defendant had directed his conduct at Illinois because the email and letter communications between the parties included Illinois addresses, such as on the email signature block. 2014 WL 4920238, at *7. That is not true of the facts here.

Even if these communications were sufficiently targeted to Illinois, they are too sparse to create personal jurisdiction as they comprise a single email chain and a single phone call over the course of two weeks. Analogously, the Seventh Circuit in *Advanced Tactical*, 751 F.3d at 801-02, found that a few intentional sales to the forum state did not create personal jurisdiction. *See also Picot*, 2015 WL 1259528, at *5 (two trips to forum state inadequate); *Fastpath*, 760 F.3d at 822-24 (two calls and emails to forum state inadequate). By comparison, Plaintiff cites *Elorac, Inc. v. Sanofi-Aventis Canada Inc.*, No. 14 C 1859, 2014 WL 7261279, at *6-8 (N.D. Ill. Dec. 19, 2014), but the Court exercised personal jurisdiction there because, among other

things, the parties had exchanged "hundreds of emails, letters and phone calls" and also had face-to-face meetings in Illinois. [34] at 10.

Moreover, communications initiated by Plaintiff, such as Defendant's response to Plaintiff's cease and desist letter, are not relevant and thus cannot support a finding of personal jurisdiction. *Walden*, 134 S. Ct. at 1124. Defendant may have gone beyond just responding to the letter by proposing a partnership with Plaintiff in the September 5 email and September 9 call. Yet Defendant's limited and ultimately unsuccessful partnership overtures do not create the required "substantial" or "meaningful" connection with Illinois for this Court to exercise personal jurisdiction. *Id.* at 1121, 1125. In *Northern Grain*, for example, the Seventh Circuit found personal jurisdiction lacking under more compelling circumstances than here. 743 F.3d at 495-96. Although the parties in *Northern Grain* had entered into multiple contracts, the Court discredited the negotiations leading up to those contracts as creating personal jurisdiction because they occurred telephonically and there were no in-person meetings in the forum (Illinois). *Id.* at 495. That is the case here too.

Also instructive is the Eighth Circuit's post-*Walden* decision in *Fastpath*. In that case, the Iowa-based plaintiff brought a breach of contract action in Iowa federal court against a California-based defendant for purportedly breaching a covenant not to compete. 760 F.3d at 819. The parties executed the covenant as part of a broader agreement to exchange confidential information for the purpose of evaluating a potential joint venture or other partnership. *Id.* Despite having a

20

contractual relationship, unlike here, the Eighth Circuit found personal jurisdiction lacking in Iowa based on *Walden*. Contact with the plaintiff cannot be the only link between the defendant and the forum. *Id.* at 818-20. It was not enough that the defendant had aggressively pursued the relationship, including through two telephones calls to Iowa and emails. *Id.* at 822-24. Those contacts were incidental to the principal contract negotiations which occurred elsewhere. *Id.* at 823.

Plaintiff cites *Hemi Group*, 622 F.3d at 758, to argue that exercising personal jurisdiction is appropriate where, as here, Defendant is prepared to do business in Illinois. [34] at 10. That case is distinguishable. Central to the Seventh Court's decision in *Hemi Group* was the New Mexico-based cigarette retailer's specific election to sell cigarettes to consumers in all states but New York (due to legal concerns of doing business there). *See* 622 F.3d at 757-59. That revealed an intentional decision to conduct business in the other 49 states, thereby subjecting the retailer to personal jurisdiction in Illinois. *Id.*

Here, nothing in the record even hints that Skiplagged.com is less accessible or otherwise varies, depending upon from where in the United States (or anywhere else in the world) a user accesses the website. Therefore, the operative facts from *Hemi Group* are not present here. Also unlike the retailer in *Hemi Group*, Defendant does not ship any tangible products to residents in Illinois; rather, the company facilitates electronic ticket purchases.

*****

21

In sum, Plaintiff has not met its burden and shown that Defendant has had relevant, meaningful contacts with Illinois. At best, Plaintiff has shown: (1) a limited course of dealing between the parties and (2) that Defendant had contacts with a third-party in Illinois. Those two contacts, even if relevant, are not meaningful enough to warrant exercising personal jurisdiction over Defendant.

### 2. Fair Play and Substantial Justice

Having determined that there are not sufficient minimum contacts to warrant exercising personal jurisdiction here, this Court need not and does not consider whether jurisdiction in Illinois would violate fair play and substantial justice. *See Northern Grain*, 743 F.3d at 492-93.

### B. Waiver

Plaintiff had argued, in the alternative, that Defendant waived personal jurisdiction by agreeing to an Illinois forum selection clause in the Affiliate Agreement. Personal jurisdiction can be waived by the parties. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982); *RAR*, 107 F.3d at 1280.

As discussed above, however, the Plaintiff is not a signatory to the Affiliate Agreement and has no standing to enforce the Agreement's forum selection clause (assuming the clause in fact applies here). To be sure, non-signatories sometimes can enforce forum selection clauses, but there must be an "affiliation" or "mutuality" with a contracting party, which would be with Orbitz or Defendant here. *Adams v. Raintree Vacation Exchange, LLC*, 702 F.3d 436, 439 (7th Cir. 2012); *see also*

*American Patriot Insurance Agency, Inc. v. Mutual Risk Management, Ltd.*, 364 F.3d 884, 888-89 (7th Cir. 2004).

Affiliation means that the non-signatory shares a corporate relationship with a signatory, such as two corporate affiliates or, as was the case in *Adams*, 702 F.3d at 439, a parent and its subsidiary. Mutuality is the principle that if a signatory can enforce the forum selection clause against a non-signatory, then the non-signatory should be allowed to do the same. *Adams*, 702 F.3d at 441. There was mutuality in *Adams* because the plaintiffs, who were signatories, alleged that Starwood Vacation Ownership ("Starwood"), a defendant who was a non-signatory, was engaged in a conspiracy to defraud with the parent company of another signatory. *Id.* at 442. The Seventh Circuit explained that the plaintiffs were allowed to enforce the clause against Starwood under the principal-agent theory that contracts can be enforced against secret principals, *i.e.*, Starwood. *Id.* at 442-43.

Another instructive case is *American Patriot*. The Seventh Circuit permitted non-signatory defendants to enforce a forum selection clause against a signatory plaintiff for two reasons: (1) the non-signatory defendants were corporate affiliates with the other signatory; and (2) they signed other contracts with the plaintiff, which, together with the contract containing the forum selection clause, formed a cohesive contractual scheme. 364 F.3d at 888-89.

Here, the record contains no evidence of affiliation or mutuality. There is no evidence that: (1) Plaintiff is affiliated with Orbitz or the Defendant; (2) Defendant

could have enforced the Affiliate Agreement's forum selection clause against Plaintiff; or (3) Plaintiff has entered into contracts with Plaintiff that form a cohesive contractual scheme along with the Affiliate Agreement. In fact, Plaintiff has not even argued that it has standing to invoke the Affiliate Agreement's forum selection clause. *See* [34] at 6-7. For these reasons, Plaintiff's waiver argument fails.

## IV. Conclusion

Defendant's motion to dismiss [24] is granted and this case is dismissed for lack of personal jurisdiction. This dismissal does not preclude Plaintiff from refiling and litigating its claims in a proper forum. *Manex v. Bridgestone Firestone North American Tire, LLC*, 533 F.3d 578, 584 (7th Cir. 2008).

Dated: April 30, 2015

Entered:

_____
John Robert Blakey
United States District Judge